UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MARK VANIER,

          Plaintiff,

   v.

BATTERY HANDLING SYSTEMS, INC.,

          Defendant.
_____/

NO. CIV. S-06-978 LKK/PAN

O R D E R

Plaintiff Mark Vanier has brought suit against defendant Battery Handling Systems, Inc. for negligence, strict products liability, and breach of implied warranties, all related to a personal injury suffered by plaintiff. Defendant Battery Handling Systems, Inc., moves for summary judgment or, alternatively, partial summary judgment on these claims. For the reasons set forth below, the court denies the motion in part and grants it part.

////

////

////

# I. FACTS[1]

Plaintiff has brought this action as a result of an injury to his foot, which he incurred when replacing a battery in a forklift at his place of employment. SUF ¶¶ 1, 21. In order to remove the battery and replace it with another, he used a battery gantry designed and manufactured by defendant Battery Handling Systems, Inc. (BHS). SUF ¶ 4. A battery gantry is a device that consists of a movable A-frame and a lifting beam with two hooks. SUF ¶ 7. The hooks descend down from the beam and are yellow. SUF ¶¶ 7, 19. The user then places the hooks in two eyelets on either side of the case of a battery or in metal plates on the top of the battery. SUF ¶ 7. An electric crane then lifts the battery. SUF ¶ 9. In order to work correctly, the hooks must be properly seated in the eyelets. SUF ¶ 7.

On the date of his injury, Mr. Vanier hooked a battery to the gantry lifting beam. SUF ¶ 8. He then lifted the battery with the electric crane. SUF ¶ 9. He observed that the hooks coming down from the lifting beam were straight up and down, and rubber straps were present, which fastened the hooks to the block. SUF ¶ 10. Once the battery was in the air, he pulled the battery towards him as he walked backwards. SUF ¶ 21. This placed Mr. Vanier's feet underneath the battery. SUF ¶ 30. After

---

[1] The facts are undisputed unless otherwise noted. Defendants object to various pieces of evidence that the plaintiff presents in opposition to defendant's motion. Some of the evidence to which defendant objects is irrelevant to the court's analysis of the summary judgment motion. To the extent that the evidence is relevant, defendant's objections are OVERRULED.

2

he had moved approximately two feet and the battery had been in the air approximately twenty seconds, the battery dislodged and fell. SUF ¶¶ 22, 23. The battery fell on Mr. Vanier's foot, injuring him. See Def. Mot. for Sum. J., 1.

Defendant alleges that once the hooks are seated in the battery's eyelets, they cannot become disengaged. Depo. of David Turner ("Turner Depo.") 11:12, 40:25-41:1, 41:15, Ex. F, Decl. of Michael Daley ("Daley Decl."); Depo. of Michael Rogers ("Rogers Depo.") 20:15-22:10, Ex. I, Daley Decl. Defendant theorizes that Mr. Vanier must have improperly placed the eyelet on the tip of the hook, rather than seating the eyelet on the neck of the hook. Rogers Depo. 55:3-56:1, 60:22-61:9. Defendant also points out that the injury would not have occurred had plaintiff been pushing instead of pulling the battery over his feet. Decl. of Elaine Serina ("Serina Decl.") ¶¶ 12-14.

Plaintiff, on the other hand, argues that once one hook is placed in an eyelet, that hook can disengage when the user places the hook into the other eyelet. Decl. of Vaughn Adams ("Adams Decl.") ¶¶ 15-16. Plaintiff also contends that if there were a safety latch on the hook, the hook could not become disengaged in the manner he asserts occurred here. Adams Decl. ¶¶ 29-30.

BHS produces two other hook designs, both of which contain latches. The first is a swing latch hook, designed for an explosion proof battery. SUF ¶ 44. This type of hook has a large diameter, making it unsafe to use with many batteries. SUF ¶ 46.

3

For this reason, consumers seeking to purchase this hook from BHS must either have explosion proof applications or provide BHS with engineering drawings of the battery with which the hook is intended to be used. SUF ¶ 47.

BHS's second alternative hook design is a slide latch hook. Defendant argues that this type of hook can only be used on batteries without covers, although plaintiff disputes this. SUF ¶ 51; Depo. of Mack Collins ("Collins Depo.") 60:22-61:5, Ex. 5, Decl. of James Rumm ("Rumm Decl.").

The gantry that Mr. Vanier used had the following warning printed on both sides of the lifting beam: "Ensures engagement of both hooks to battery before lifting Meets OSHA standards." SUF ¶ 15. Plaintiff saw this warning. Id. The gantry that Mr. Vanier's employer received was accompanied by written usage instructions. SUF ¶ 26. These instructions inform users to lock his elbows, to stay an arm-length away from the battery when moving the lifting beam, to guide the battery by placing his hands on the rear of the lifting beam, and to make sure his feet are not under the battery when moving it. SUF ¶ 25. Mr. Vanier never saw these instructions or other written instructions before operating the gantry. SUF ¶¶ 32-33. Instead, Mr. Vanier's coworker explained to him how to use the gantry. SUF ¶¶ 34, 36. Mr. Vanier admitted that his foot likely would not have been injured if he had been pushing the battery rather than pulling it. SUF ¶ 28.

BHS states that it is aware of no other products liability

suits regarding this type of gantry system. Collins Depo. 15:1-2, 19:1-16, 78:21-79:2.

### III.

### STANDARD FOR MOTION FOR SUMMARY JUDGMENT UNDER
### FEDERAL RULE OF CIVIL PROCEDURE 56

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Secor Ltd. v. Cetus Corp., 51 F.3d 848, 853 (9th Cir. 1995).

> Under summary judgment practice, the moving party [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A]

1  complete failure of proof concerning an essential element of the
2  nonmoving party's case necessarily renders all other facts
3  immaterial." Id.  In such a circumstance, summary judgment
4  should be granted, "so long as whatever is before the district
5  court demonstrates that the standard for entry of summary
6  judgment, as set forth in Rule 56(c), is satisfied." Id. at
7  323.
8      If the moving party meets its initial responsibility, the
9  burden then shifts to the opposing party to establish that a
10 genuine issue as to any material fact actually does exist.
11 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
12 586 (1986); see also First Nat'l Bank of Ariz. v. Cities Serv.
13 Co., 391 U.S. 253, 288-89 (1968); Secor Ltd., 51 F.3d at 853.
14     In attempting to establish the existence of this factual
15 dispute, the opposing party may not rely upon the denials of its
16 pleadings, but is required to tender evidence of specific facts
17 in the form of affidavits, and/or admissible discovery material,
18 in support of its contention that the dispute exists.  Fed. R.
19 Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11; see also First
20 Nat'l Bank, 391 U.S. at 289; Rand v. Rowland, 154 F.3d 952, 954
21 (9th Cir. 1998).  The opposing party must demonstrate that the
22 fact in contention is material, i.e., a fact that might affect
23 the outcome of the suit under the governing law, Anderson v.
24 Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Owens v. Local
25 No. 169, Ass'n of Western Pulp and Paper Workers, 971 F.2d 347,
26 355 (9th Cir. 1992) (quoting T.W. Elec. Serv., Inc. v. Pacific

1  Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)), and
2  that the dispute is genuine, i.e., the evidence is such that a
3  reasonable jury could return a verdict for the nonmoving party,
4  Anderson, 477 U.S. 248-49; see also Cline v. Indus. Maint. Eng'g
5  & Contracting Co., 200 F.3d 1223, 1228 (9th Cir. 1999).

6      In the endeavor to establish the existence of a factual
7  dispute, the opposing party need not establish a material issue
8  of fact conclusively in its favor.  It is sufficient that "the
9  claimed factual dispute be shown to require a jury or judge to
10 resolve the parties' differing versions of the truth at trial."
11 First Nat'l Bank, 391 U.S. at 290; see also T.W. Elec. Serv.,
12 809 F.2d at 631.  Thus, the "purpose of summary judgment is to
13 'pierce the pleadings and to assess the proof in order to see
14 whether there is a genuine need for trial.'"  Matsushita, 475
15 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's
16 note on 1963 amendments); see also Int'l Union of Bricklayers &
17 Allied Craftsman Local Union No. 20 v. Martin Jaska, Inc., 752
18 F.2d 1401, 1405 (9th Cir. 1985).

19     In resolving the summary judgment motion, the court
20 examines the pleadings, depositions, answers to interrogatories,
21 and admissions on file, together with the affidavits, if any.
22 Rule 56(c); see also In re Citric Acid Litigation, 191 F.3d
23 1090, 1093 (9th Cir. 1999).  The evidence of the opposing party
24 is to be believed, see Anderson, 477 U.S. at 255, and all
25 reasonable inferences that may be drawn from the facts placed
26 before the court must be drawn in favor of the opposing party,

7

1 see Matsushita, 475 U.S. at 587 (citing United States v.
2 Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)); See also
3 Headwaters Forest Def. v. County of Humboldt, 211 F.3d 1121,
4 1132 (9th Cir. 2000). Nevertheless, inferences are not drawn
5 out of the air, and it is the opposing party's obligation to
6 produce a factual predicate from which the inference may be
7 drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp.
8 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th
9 Cir. 1987).

10   Finally, to demonstrate a genuine issue, the opposing party
11 "must do more than simply show that there is some metaphysical
12 doubt as to the material facts. . . . Where the record taken as
13 a whole could not lead a rational trier of fact to find for the
14 nonmoving party, there is no 'genuine issue for trial.'"
15 Matsushita, 475 U.S. at 587 (citation omitted).

**IV. ANALYSIS**

**A.  Negligence Action**

In order to prove defendant's negligence, plaintiff must show that defendant owed him a legal duty, that it breached that duty, and that the breach was the legal cause of plaintiff's injuries. Merrill v. Navegar, Inc., 26 Cal. 4th 465, 477 (2001).

   **1.  Duty**

Whether a duty is owed to a particular plaintiff and the scope of that duty are legal questions. Ann M. v. Pacific Plaza Shopping Center, 6 Cal. 4th 666, 674 (1993). Under California law, "[e]veryone is responsible, not only for the result of his

8

or her wilful acts, but also for any injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person . . . ." Cal. Civ. Code § 1714(a).

Common law exceptions to this principle exist where public policy requires; to make this determination, courts consider:

> the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.

Merrill, 26 Cal. 4th at 477, citing Rowland v. Christian, 69 Cal. 2d 108, 133 (1968). Of these factors, the foreseeability of the harm "plays a very significant role" in this determination. Ballard v. Uribe, 41 Cal. 3d 564, 573 n. 6 (1986). When considering foreseeability in the context of the issue of duty, the court need not decide whether the specific plaintiff's injury was reasonably foreseeable in light of the defendant's conduct in question. Id. Instead, the court should consider more generally whether the type of negligent conduct alleged is sufficiently likely to lead to the type of harm alleged by the plaintiff, so that liability would be appropriate. Id. The likelihood of the harm reflects whether a reasonable person would take account of the harm in guiding his conduct. Friedman v. Merck & Co., Inc., 107 Cal. App 4th 454, 466 (2003), citing

9

Bigbee v. Pacific Tel. & Tel. Co., 34 Cal. 3d 49, 57 (1983).

Here, the defendants have not shown as a matter of law that they did not owe a duty to the plaintiff for the type of injury he alleges. The only evidence the defendant offers for this issue is its statement that it is aware of no other lawsuits or claims of injury based on use a manual gantry. See SUF ¶ 3. It is undisputed that the plaintiff's injury occurred while he was using the gantry crane to replace a battery in a forklift, which is the purpose of the defendant's product. SUF ¶¶ 1, 5. Even if Mr. Vanier had, as defendant argues, improperly attached the hooks and improperly pulled rather than pushed the battery, it cannot be said that such misuse is so unforeseeable as to warrant the creation of an exception of Civil Code section 1714. Therefore, the court holds that BHS did owe Mr. Vanier a duty of ordinary care in its design of the gantry system.

**2. Breach**

Where a plaintiff argues that the defendant was negligent in the design of the item it placed on the market, the plaintiff must show that the defendant did not use reasonable care in designing the product to make it safe for its intended use. Pike v. Frank G. Hugh, Co., 2 Cal. 3d 465, 470 (1970). Reasonable care can be gauged by the likelihood of the harm expected from the item as designed and the gravity of that harm if it does occur, against the burden to the defendant of the precaution that would effectively avoid the harm. Id.; see also Merrill, 26 Cal. 4th at 479. Negligence can be found based on the defective

design itself or the manufacturer's failure to alter the item so as to minimize the likelihood of injury. See, e.g., Pike, 2 Cal. 3d at 470-71; Varas v. Barco Mfg. Co., 205 Cal. App. 2d 246, 259 (1962). Additionally, if a manufacturer knows his product is dangerous in a way that a user would not typically discover, the manufacturer has a duty to provide a warning. Tingey v. E.F. Houghton & Co., 30 Cal.2d 97, 102 (1947).

The determination of whether defendant's conduct met the standard of reasonable care is generally best left for a jury to determine. TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 450 n. 12 (1976). A court should refrain from deciding the issue of breach as a matter of law unless reasonable minds could not differ on the inferences drawn from the facts of the case. Id.

Here, the plaintiff has produced admissible evidence that defendant was unreasonable in designing their product without a latch that would hold the hook in place on the battery. See Adams Decl. ¶¶ 28-29. Although defendant has argued that it, as a matter of law, discharged its duty by providing users of the product a warning and safety instructions, this does not suffice to succeed in a motion for summary judgment. Reasonable jurors could determine that, notwithstanding the defendant's instructions and warning, the product was unreasonably designed or defendant unreasonably did not undertake sufficient measures to ensure the safe use of the product. For this reason, the court holds that the question of whether defendant breached its duty to the plaintiff is a question of fact best left to the

jury.

**C.   Proximate Cause**

A defendant is only liable for breach of his duty of care if his breach was the cause-in-fact and the proximate cause of the plaintiff's injury. PPG Indus., Inc. v, Transamerica Ins. Co., 20 Cal. 4th 310, 315 (1999). Proximate cause is typically understood to mean that plaintiff's injury was a foreseeable consequence of defendant's breach. See, e.g., Brewer v. Teano, 40 Cal. App. 4th 1024, 1030 (1995). Foreseeability for the purposes of the proximate cause determination is more fact-specific than that considered when establishing that defendant had a legal duty to the plaintiff. Ballard, 41 Cal. 3d at 573, n. 6. The proximate cause determination requires an inquiry into whether the defendant could have foreseen "the general character of the event or harm" claimed by the plaintiff. Bigbee, 34 Cal. 3d at 57-58.

The issue of probable cause is usually one of fact, best determined by a jury. Bigbee, 34 Cal. 3d at 56. It may be decided as a matter of law if the facts are undisputed and there is only one reasonable inference that can be drawn from them. Id.

Here, defendant argues that it provided sufficient safety warnings for the use of the gantry system, and the plaintiff's injury would not have occurred had he complied with the instructions for using the product. See Decl. of Elaine Serina ("Serina Decl.") ¶¶ 12-14. Plaintiff counters that he was using

the product in a manner that the defendant should have anticipated. Oppo. at 5. It is undisputed that the plaintiff was using the gantry to remove a battery from a forklift, and did so by placing the gantry hooks in the eyelets of the battery case and then moving the battery with the help of a crane. SUF ¶¶ 1, 8, 9. This is the essential purpose of the defendant's product. SUF ¶ 5. The court holds that the plaintiff has adduced sufficient evidence to permit a reasonable jury to conclude that the plaintiff's injury was a foreseeable consequence of the absence of a latch, notwithstanding the safety instructions accompanying the gantry.

Consequently, the court holds that the defendant has not shown that it would, as a matter of law, succeed on the plaintiff's negligence claim. The motion for summary judgment is denied as to this claim.

**B. Strict Liability Action**

A manufacturer is strictly liable for injuries resulting from the use of its product if the product was defectively designed, defectively manufactured, or distributed without adequate warnings. Arnold v. Dow Chemical Co., 91 Cal. App. 4th 698, 715 (2001). Here, the plaintiff asserts that defendant's product was defectively designed. A product is defective in design in one of two ways. First, the plaintiff can prove that the product does not perform safely as an ordinary consumer would expect when used in reasonably foreseeable manner. Barker v. Lull Eng'g Co., 20 Cal. 3d 413, 426-27 (1978). Second, the

1  plaintiff alternatively can prove that the design proximately
2  caused plaintiff's injuries and that the defendant has failed to
3  prove that the benefits of the design outweigh its risks. Id.
4      **1.   The Consumer Expectation Test**
5      To establish liability based on a design defect as gauged
6  by consumer expectations, the plaintiff must prove that the
7  ordinary experience of the product's users shows that the design
8  did not satisfy minimum safety assumptions. Soule v. General
9  Motors Corp., 8 Cal. 4th 548, 567 (1994). If the product has a
10 specialized use making it unfamiliar to the general public, a
11 jury nevertheless may apply the consumer expectation test based
12 on the minimum expectations of those persons who do use the
13 product. Id. at 568, n. 4. As one California court explained:

> there are certain kinds of accidents – even where
> fairly complex machinery is involved – which are so
> bizarre that the average juror, upon hearing the
> particulars might reasonably think, "Whatever the user
> may have expected from that contraption, it certainly
> wasn't that."

18 Akers v. Kelley, Co., 173 Cal. App. 3d 633, 650 (1985). On the
19 other hand, if the alleged design defect involves complex
20 technical details such that the ordinary user of the product
21 would have no minimum safety assumptions about the functioning
22 of a particular product design, the consumer expectation test is
23 inappropriate. For instance, in a case where the plaintiff
24 alleged that a car manufacturer improperly designed the car's
25 frame and wheel bracket to prevent an inward collapse when the
26 car was struck with a certain force in a particular location,

the California Supreme Court concluded that an ordinary car consumer would not have assumptions about the car's safety in these specific circumstances. <u>Soule</u>, 8 Cal. 4th at 557, 570. For this reason, the court concluded, the consumer expectation test should not be employed in such a case. <u>Id</u>. at 570.

Here, defendants argue that the consumer expectation test should not be applied, as a matter of law, because the gantry system is a product with which the ordinary consumer is not familiar. Defendants misunderstand California law on this point. The relevant inquiry is whether the ordinary consumer *of the defendant's product* would have minimum safety assumptions about the products use that were not met. <u>Soule</u>, 8 Cal. 4th at 567-68. Defendants have produced no evidence that, as a matter of law, the ordinary user of the battery gantry would not expect the battery to fall once the gantry hooks were inserted, as plaintiff alleges here. <u>See</u> Plaintiff's Additional Genuine Issues of Material Fact ¶ 18. Furthermore, the defendant has not shown as a matter of law that the defect alleged here is of such a technical nature that the ordinary user of the gantry could not have any assumptions about the minimum safety of that aspect of the product. <u>See</u> <u>Soule</u>, 8 Cal. 4th at 557, 570. Therefore, the court must deny defendant's motion for summary judgment on this issue.

**2.   The Risk / Benefit Test**

Under this test for strict liability resulting from a design defect, the plaintiff need only make a prima facie

15

showing that the injury was proximately caused by the defendant's design. Barker, 20 Cal. 3d at 431. Then, the burden shifts to the defendant to prove that the benefits of the design outweigh the risk of danger inherent in the design. Id. at 430.

### a. Prima Facie Showing of Proximate Cause

The plaintiff's burden is only to adduce evidence that would permit a jury to find that the defendant's design defect was the proximate cause of the plaintiff's injury. Campbell v. General Motors Corp., 32 Cal. 3d 112, 119 (1982). Where a plaintiff claims that the defect was the absence of a particular safety device, "unless very unusual circumstances exist, this type of claim presents a factual issue which can only be resolved by a trier of fact." Id. at 120. In order to make his prima facie case, the plaintiff need not show that nothing else could have been the proximate cause of his injury, but only that a jury could reasonably draw the inference that the defendant's design proximately caused his injury. Id. at 121. Even a plaintiff's mere description of how an accident occurred could permit a jury to infer that the lack of a safety feature proximately caused the injury. See id. at 122-23.

Here, plaintiff argues that the lack of a latch on the gantry hook was a design defect that proximately caused plaintiff's injury. Plaintiff's expert, Dr. Vaughn Adams, stated in his affidavit that the gantry hook should have had a latch, which would have prevented the injury that occurred here. Adams

Decl. ¶¶ 29-30.[2] Defendant counters that the injury resulted from Mr. Vanier's improper placement of the gantry hook, which would not have been prevented even if a latch had been included in the design. SUF ¶ 43.

The court holds that the plaintiff has made its prima facie case of probable cause. A jury could consider the competing evidence and allegations of the parties and reasonably conclude that the absence of a latch was the proximate cause of the plaintiff's injury.

Consequently, in order to succeed in its motion for summary judgment on the issue of strict liability, the defendant must show that it is entitled to judgment in its favor on the second prong of the risk / benefit test.

### b.  Balance of Risk and Benefits of the Design

After the plaintiff has made his prima facie showing, the burden shifts to the defendant to prove that the benefits of the product design outweigh the safety risks inherent to it. Barker, 20 Cal. 3d at 430. When making this determination, the jury may consider many factors, including the "gravity of the danger posed by the challenged design, the likelihood that such danger would occur, the mechanical feasibility of a safer alternative design, the financial cost of an improved design, and the adverse consequences to the product and to the consumer that

---

[2] The defendant, at oral argument, seemed to suggest that the court disregard plaintiff's expert without a hearing on the matter. That claim is not well taken.

17

would result from an alternative design." Id. at 431. Some courts have also included in this calculus the warnings that are provided to users of the product. See Hansen v. Sunnyside Prod., Inc., 55 Cal. App. 4th 1497, 1520 (1997).

Defendant asks this court to find that it has, as a matter of law, met its burden of proof on this issue. In other words, defendant argues that no reasonable juror could conclude that the risks of the gantry design outweigh its benefits. To support this conclusion, the defendant offers that the gantry hook as designed has the following benefits: it is versatile, the hooks are highly visible when inserted into a battery, it is easy to use, it is accompanied with sufficient safety warnings, and the gantry hooks will not become disengaged once they are inserted properly. SUF ¶¶ 13, 15, 19, 25, 42, 58. The plaintiff disputes this final point with affidavits from plaintiff's coworkers. See Turner Depo. 28:19-29:3.

As far as the risks of the product, defendant asserts that the latch is virtually risk-free if used properly, citing the absence of other product liability suits about the product. Collins Depo. 15:1-2, 19:1-16, 78:21-79:2. Defendant also argues that any risk of injury that does accompany the gantry hook could not be mitigated by a different design. SUF ¶¶ 53, 58.

Defendant simply has not met its burden to prove, as a matter of law, that the benefits of the gantry hook at issue outweigh its risks. Defendant essentially argues that the risks of the hook are negligible, but the benefits are many. The

plaintiff tenders evidence contesting defendant's representations about this risk inherent in the design of the hook at issue. See Plaintiff's Additional Genuine Issues of Material Fact ¶¶ 8, 11; Adams Decl. ¶¶ 25, 29-30. This suffices to convince this court that a reasonable jury could find that defendant has not met its burden on this issue.

### 3. Alternative Bases for Strict Liability

A manufacturer may also be liable under a strict liability theory for manufacturing defects and failure to warn. Arnold, 91 Cal. App. 4th at 715. Plaintiff does not oppose defendant's motion as to these claims. Therefore, the motion is granted with regard to these subclaims.

## C. Breach of Implied Warranty

When parties are in privity of contract, one party may recover for the breach of implied warranties of fitness and merchantability. Burr v. Sherwin Williams Co., 42 Cal. 2d 682, 695 (1954). Plaintiff does not oppose defendant's motion as to this claim. Defendant's motion is therefore granted as to this claim.

## V. CONCLUSION

Defendant's motion for summary judgment is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

DATED: September 12, 2007.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

19